## Appeal of EDWARD MALLINCKRODT, Sr.

Docket No. 1750.     Decided September 27, 1926.

1. GAIN FROM DISPOSITION OF CORPORATE STOCK.—Prior to June, 1919, petitioner had acquired and then owned 300 shares of stock of Mechanics American National Bank of St. Louis. During that month he participated with other stockholders in an increase of the bank's capital stock by subscribing for his proportionate number, 75 shares, at $150 per share, and then his 375 shares had cost $110,282.88. On or about July 5 this bank was merged or consolidated with two other banks resulting in the First National Bank in St. Louis, and thereupon the petitioner surrendered his 375 shares of the Mechanics American National Bank and received 500 shares of the new First National Bank in St. Louis. The par value of all these shares was $100. The market value of the First National Bank shares on the day of issue was $210 per share. *Held*, that this transaction resulted in the realization of no gain to the petitioner.

2. LOSS FROM SALE OF ASSETS.—In the year 1918 the petitioner by deed of trust created a trust estate to which he granted and conveyed certain properties and securities described in the deed and to which he thereafter at divers times granted and conveyed other properties, securities, and money. On a day near the close of the year 1920 he gave and granted to this trust a sum of money. At or about the same time he placed in the hands of his broker certain corporate stocks and other securities for sale. The trust purchased these corporate stocks and securities from the brokers. *Held*, that the petitioner is entitled to a deduction from gross income for the year 1920 of the loss sustained upon the sale of such stocks and securities.

*Daniel N. Kirby, Esq.*, for the petitioner.
*E. C. Lake, Esq.*, for the Commissioner.

This proceeding was brought for a redetermination of deficiencies for the year 1919 in the amount of $2,588.80 and for the year 1920 in the amount of $61,171.93, totaling $63,760.73. The issues presented for consideration are:

1. Whether the petitioner realized during the year 1919 a taxable gain growing out of his ownership of shares of stock in a national

bank and his participation in the merger or consolidation of said bank with other national banks.

2. Whether he is entitled to claim a deduction for the year 1920 of a loss alleged to have been sustained as a result of the disposition of certain corporate stocks and securities under the conditions set forth in the findings of fact.

### FINDINGS OF FACT.

1. In June, 1919, the petitioner was the owner of 300 shares of stock of the Mechanics American National Bank of St. Louis, hereinafter referred to as the Mechanics Bank. These 300 shares had cost the petitioner $99,032.88.

During this month of June there was pending a proposal to bring about a merger or consolidation of this Mechanics Bank with the Third National Bank of St. Louis and the St. Louis Union National Bank, and thus to form the First National Bank in St. Louis. The consolidation proposal required that each of the three existing banks contribute to the consolidated institution acceptable assets in the amount of $5,250,000, together with sufficient additional assets to cover all state, city, and Federal taxes, chargeable against the constituent banks up to and including May 31, 1919. The book value of the assets of the Mechanics Bank at this time was approximately $4,966,598.12. It was, therefore, necessary for the Mechanics Bank to increase its assets before it could participate in the consolidation. At this time the capital stock of the Mechanics Bank consisted of 20,000 shares of the par value of $100 each and its directors proposed to its shareholders that they each and all join in the purchase pro rata of 5,000 additional shares of the par value of $100 and that they pay for such additional shares $150 per share, which would result in increasing the assets of the Mechanics Bank in the amount of $750,000 and result in a total book value of such increased assets in the amount of $5,716,598.12. In connection with this proposal the directors of the Mechanics Bank issued to their stockholders a statement containing, among others, the following paragraphs:

Each stockholder of this bank will receive 1⅓ shares of stock in the new or consolidated bank, for each share he owns in the Mechanics-American National Bank at the close of business on July 7, 1919, or on the day such consolidation becomes effective.

It is believed that between six and twelve months after the consolidation the stockholders of the Mechanics-American National Bank, or their legal representatives, will receive from its assets beyond the $5,250,000.00 contributed by it to the consolidated or new bank, liquidation dividends on their stock holdings at the time of the consolidation. No attempt will now be made to estimate these dividends; but we wish our stockholders to know that they are expected. Such dividends will be paid out of assets of this bank which are

not necessary to meet its contribution of $5,250,000.00 to the capital surplus and undivided profits of the new bank.

The proposed increase of the capital stock of the Mechanics Bank was carried out and the petitioner subscribed and paid for his proportionate share of the increase of such capital stock and there was issued to him an interim certificate evidencing his payment for 75 of the additional shares at the rate of $150 per share, or a total amount of $11,250.

On June 26, 1919, at a meeting of the board of directors of the Mechanics Bank, the agreement of consolidation with the other two banks was presented and a resolution accepting and authorizing the execution of said contract was adopted. The said agreement of consolidation contained, among other things, the following provisions:

> The name of the consolidated association shall be " First National Bank in St. Louis."
>
> The amount of capital stock of the consolidated association shall be Ten Million Dollars ($10,000,000.00) divided into one hundred thousand (100,000) shares of One Hundred Dollars ($100.00) each, subject to the right to change the amount of said capital hereafter as is now or shall hereafter be authorized by law. On the date of consolidation its surplus shall be Five Million Dollars ($5,000,000.00) and its undivided profits shall be Five Hundred Thousand Dollars ($500,000.00). Said capital, surplus and undivided profits at the date of consolidation shall then aggregate Fifteen Million Five Hundred Thousand Dollars ($15,500,000.00). Of this capital stock thirty-three thousand three hundred thirty-three and one-third (33,333⅓) shares shall be allotted to the then shareholders of each of said banks, being one and one-third (1⅓) shares for each share now held by them.
>
> In the event that the committee finds assets belonging to any of the three consolidating banks in excess of the said amount to be contributed by each of them, then such excess assets, if any, shall be by such bank transferred and delivered to the consolidated bank, to be held by said bank in a special trust account for liquidation and distribution among the stockholders, as of the date of consolidation, of the respective banks contributing the same. *The directors of the consolidated bank shall have full and absolute discretion in the liquidation and distribution* of the same, and neither they nor the bank shall be in any wise liable for any act of theirs in relation thereto, except for their wilful misconduct. Such excess assets may be held for a period of six (6) months after the consolidation by the consolidated bank as a guarantee against any undisclosed liabilities of the contributing banks, and if any such liabilities are asserted within six (6) months after the consolidation, said excess assets, or such part thereof as the directors of the consolidated bank shall deem advisable shall be held by the consolidated bank until such liabilities are discharged, and said assets may be used in the absolute discretion of the directors of the consolidated bank to liquidate and discharge any such liabilities. [Italics ours.]

On July 3, 1919, at a special meeting of the stockholders of the Mechanics Bank a resolution was adopted ratifying and approving said contract of consolidation. Between May 15, 1919, and June

21, 1919, various blocks of stock of the Mechanics Bank were sold on the St. Louis stock exchange at prices ranging from $308 to $320 per share. On June 26, 10 shares sold at $282.50 per share and the subscription rights sold at $32.50 per share. On June 27, 50 shares sold at $282.50 and subscription rights at $33.25.

As soon as the consolidation of said three banks was approved by the Comptroller of the Currency, the petitioner surrendered all of his then holdings of stock in said Mechanics Bank consisting of said 300 shares which he had purchased in 1905, plus 75 shares acquired in June, 1919, and he received through his participation in said consolidation and by the conversion of his 375 shares of stock in the Mechanics Bank, stock certificates of the First National Bank in St. Louis for 500 shares of stock, par value $100 each.

The fair market value of each of these shares in the First National Bank when received was $210 per share, or a total market value of 500 shares of $105,000.

All of the transactions relating to said consolidation of said three banks and the conversion of the shares of the petitioner in said Mechanics Bank into shares in said First National Bank in St. Louis were pursuant to the provisions of the National Banking Act, and were further pursuant thereunder, to the provisions of the contract of consolidation, and to the above-stated corporate actions of said Mechanics Bank.

2. In April, 1918, the petitioner, as grantor, made a voluntary trust settlement or conveyance of certain property thereby conveyed to the St. Louis Union Trust Company and Edward Mallinckrodt, Jr., as joint trustees of the trust estate created by said instrument. The said trust instrument contains, among other things, the following provisions:

This Indenture of Trust, Made and entered into this 17th day of April, 1918, by and between Edward Mallinckrodt, of the City of St. Louis, State of Missouri, hereinafter referred to as the "Trustor," party of the first part, and Edward Mallinckrodt, Jr., and the St. Louis Union Trust Company, a Missouri corporation, hereinafter referred to as "Trustees," parties of the second part, Witnesseth:

First: That in consideration of the trust hereinafter mentioned, the Trustor does hereby grant, bargain, transfer, sell, convey and confirm unto the Trustees, parties of the second part:

1. Five Hundred shares of the capital stock of the "Jane Holding Corporation," being a corporation organized and existing under and by virtue of the laws of the State of Missouri, which said shares of stock so conveyed are represented by Certificates No. 11 for 498 shares, No. 12 for one share, and No. 13 for one share.

2. First Mortgage Bonds of the Finance & Mortgage Bonds of the Finance & Mortgage Corporation aggregating $370.000 in par value; Second Mortgage Bonds of the Finance & Mortgage Corporation aggregating $252,000 in par value.

3. All the right, title and interest of the Trustor in and under any agreement for the purchase of bonds of said Finance & Mortgage Corporation, and in and under any contract or agreement relating to the "Arcade Building Enterprise" hereinafter described;

Together with any other property which may hereafter be transferred or conveyed to or deposited with the Trustees under the terms of this trust, or which they may acquire as Trustees hereunder, together with any increment to any of the said property.

This conveyance is in trust nevertheless for the uses and purposes, upon the terms and conditions, subject to the limitations, with the duties and powers in the Trustees, and for the benefit of the persons as "beneficiaries," hereinafter stated, as follows:

The Trustor hereby directs the Trustees to take possession of all the property hereby conveyed to them, or which they may hereafter acquire in trust under the terms hereof, together with all increment thereto, and to hold, manage, control and dispose of the principal and income of the trust estate, and in respect of the same and every part thereof, to exercise the powers and perform the duties, all as is hereinafter set out.

Then follow subdivisions 2 to 9, inclusive, which contain in great detail the conditions of the trustor's grant respecting the handling of the properties conveyed to the trust, the use of the principal and of the income of the same and the distribution of the income and final division of the principal making provisions for the benefit of the business designated as the Arcade Building Enterprise and distribution of income to the beneficiaries Edward Mallinckrodt, Jr., his wife, Elizabeth E. Mallinckrodt, and for the children and grandchildren of said Edward Mallinckrodt, Jr. These are followed by subdivision 10, the first paragraph of which is as follows:

This trust agreement and settlement is absolute, and is irrevocable by the Trustor, and the Trustor shall hereafter possess no beneficial right or title in the trust estate hereby conveyed.

Then follow six subdivisions devoted to the matters of the final distribution and winding up of the said trust estate.

When the above trust was created the grantor (this petitioner) was engaged in the construction of a large store and office building in the City of St. Louis, Mo., known as the Arcade Building. The completion of this building required large additional amounts of money which were furnished by the grantor through additional donations made by him to the trust estate from time to time. In addition to donations made by the petitioner to this trust estate intended for use in relation to said Arcade Building, he also made other donations of moneys and securities having no special relation to said building. All of the donations to this trust estate made by the donor subsequent to the creation of the trust estate were made pursuant to the provisions of the above trust instrument, by which he reserved the right to increase said trust estate by later donations thereto.

He had made a number of such additional donations to the trust estate before the transaction involved in this case.

Toward the close of 1920, the petitioner wished to dispose of certain securities and to establish his loss upon them. He disposed of the following securities through G. H. Walker & Co., an established brokerage house in St. Louis:

$81,500 face amount of Hudson & Manhattan, Series A, 5% First Mortgage bonds, due Feb. 1, 1957.

100 shares Commonwealth Trust Company, on which 30% had been paid in liquidation.

168 shares New England Equitable Insurance Company.

500 shares Hargadine-McKittrick Dry Goods Company, first preferred.

238-2/21 shares Hargadine-McKittrick Dry Goods Company, second preferred.

375-100/375 shares Hargadine-McKittrick Dry Goods Company, common.

G. H. Walker & Co., as brokers and for the account of the petitioner, negotiated the sale of and sold these securities to the trustees of the above trust at the following prices:

| | |
|---|---:|
| For the Hudson & Manhattan bonds at $57.50, total price | $46,873.42 |
| Less commission and tax | 122.28 |
| Net price for principal | 46,751.14 |
| Plus interest, 143 days | 1,619.06 |
| Total | 48,370.20 |
| For the Commonwealth Trust stock | 6,000.00 |
| Less commission and tax | 27.00 |
| Net proceeds | 5,973.00 |
| For the New England Equitable Insurance Company stock at $1.00 | 168.00 |
| Less commission and tax | 24.36 |
| Net proceeds | 143.64 |
| For the Hargadine-McKittrick first preferred at $1.00 | 500.00 |
| Less commission and tax | 72.50 |
| Net proceeds | 427.50 |
| For the Hargadine-McKittrick second preferred at $1.00 | 238.09 |
| Less commission and tax | 34.66 |
| Net proceeds | 203.43 |
| For said Hargadine-McKittrick common stock at $1.00 | 375.27 |
| Less commission and tax | 54.52 |
| Net proceeds | 320.75 |

These prices were in each instance the fair market values of the respective items at the time.

The cost to the petitioner as confirmed by his books, and the fair market value on March 1, 1913, of each of these items of securities, was as follows:

| Name of securities | Cost | Fair market value 3/1/13 |
|---|---|---|
| (a) For the Hudson & Manhattan bonds received after March 1, 1913 | $70, 274. 69 | $70, 274. 69 |
| (b) For the Commonwealth Trust Company stock | 48, 900. 00 | 37, 000. 00 |
| (c) For the Hargadine-McKittrick Dry Goods Company stock, First Preferred | 87, 848. 32 | 39, 000. 00 / 9, 047. 61 |
| Hargadine-McKittrick Dry Goods Company stock, Second Preferred | | 48, 047. 61 |
| Hargadine-McKittrick Dry Goods Company stock, Common | | 3, 378. 00 |
| (d) For the New England Equitable Insurance Company stock (received through exchange for Equitable Surety Company stock) | 50, 000. 00 | 52, 000. 00 |
| Total | 257, 023. 01 | 210, 700. 30 |

The prices at which these securities were disposed of to the trustees were negotiated by said brokers with said trustees, who desired to acquire said securities at the prices thus negotiated and agreed upon.

At the time the trustees of the trust negotiated this purchase and wished to conclude same, the trustees were short of funds, and as had been done frequently theretofore when the trustees needed or desired money for transactions that they wished to enter into, they informed the grantor of their need of cash, and the grantor voluntarily made an additional donation to the trust estate of the amount of cash then needed by the trustees. This donation of cash was made to the trustees as an additional donation to the corpus of the trust estate held by them.

The trustees thereupon concluded their proposed acquisition of said securities from said brokers and paid cash for them out of the trust estate.

The petitioner received as the result of the disposal, the said purchase price at which the brokers had negotiated the disposal, less said above items of commissions and taxes.

In the petitioner's income-tax return for 1920 he deducted as a loss the difference ($135,995.23) between what the securities had originally cost him, or if acquired before March 1, 1913, their fair market value on that date, and the amount received for them as the proceeds of said sale.

The Commissioner disallowed this deduction upon the finding and theory that the sale of the securities did not constitute a *bona fide* sale, but must be treated as a *gift* of the securities to the trust, because the amount of money that the grantor gave to the trust

was identical with the purchase price at which the securities were sold to the trustees, and because " the payment by the trust of $55,-773.84 for the securities *resulted in no diminution of the trust*, for it merely expended for the securities what the trustor had given it on the very day of the purchase of the securities," so that the transaction " resolves itself into Edward Mallinckrodt, Sr., *giving to the trust* securities alleged to have been sold to it on December 24, 1920."

Based upon this conclusion, the Commissioner found an additional tax liability and deficiency of $61,171.93, all of which is contested by the petitioner.

OPINION.

TRUSSELL: 1. In arriving at his determination in this case the Commissioner has taken the position that the petitioner, when he turned in his stock in the Mechanics Bank and received stock in the First National Bank, was a party to an exchange of securities, and that there were two separate blocks of securities, one block of 300 shares which had cost the petitioner $99,032.88, and another block of 75 shares which had cost the petitioner $11,250, and that the petitioner realized a gain on the exchange of the latter block. We are unable to follow the Commissioner in his view of this matter. The petitioner acquired the 75 shares of the Mechanics Bank stock by the exercise of a stockholder's right to purchase same at a given price less than their true value. For the purpose of ascertaining whether a gain or loss results from the future disposition of such stock all the shares held, including the 300 formerly held and the 75 shares acquired, must be treated as one property and the rule laid down in the case of *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247, 252, 253, is controlling in respect of this phase of this case.

When the petitioner had paid for his additional shares of Mechanics Bank stock he was then the owner of 375 shares of such stock which had cost $110,282.88. The stock of the First National Bank which he received by virtue of consolidation had a market value of $105,000. If this transaction is considered merely as an exchange of stock of one bank for the stock of another bank, the market value of the latter being less than the cost of the former, there could be no gain derived from such transaction. *Goodrich* v. *Edwards*, 255 U. S. 527, 535.

When the Mechanics Bank, together with two other banks, brought about a consolidation and the formation of the First National Bank, the Mechanics Bank, acting in its corporate capacity, transferred to the First National Bank acceptable assets of an agreed value of $5,250,000, together with all its other assets which had a book value of $5,716,598.12, $5,250,000 of which was a contribution to the capi-

tal of the new bank and $466,598.12 of which was to be held by the new bank, and out of this fund taxes accrued against the Mechanics Bank and any undisclosed liabilities were to be paid and the balance converted into cash and distributed to the stockholders of the Mechanics Bank and it was expected that there would result a considerable sum thus distributable to this petitioner and the other stockholders of the Mechanics Bank. The First National Bank thus became in effect the liquidation agent of the Mechanics Bank, and when the First National Bank delivered to this petitioner his pro rata number of the shares of the First National Bank it did so as such liquidating agent, and the market value of the shares of the First National Bank delivered to the petitioner having been less than the cost of the shares of the Mechanics Bank owned by the petitioner there could be no gain realized at that time. Whether when the assets of the Mechanics Bank shall have been finally liquidated this petitioner shall realize a gain or a loss from the transaction is not here in issue.

2. When in 1918 this petitioner created the trust estate described in the findings of fact he conveyed and granted to it certain properties and securities and all interest therein forever; likewise when at other times he made further grants or gifts to this trust estate he also parted with all title and interest in such grants or gifts forever. And, when during the latter days of 1920, he made a gift of a sum of money to this trust estate, he made such gift under the terms of the trust deed, and upon delivery of the money so granted its title vested instanter in the trust estate and this petitioner then parted with all title and interest in and to such moneys absolutely and forever. The fact that at or about the same time the trust estate used such money for the purpose of purchasing securities which this petitioner had placed in the hands of a recognized broker for sale can not be interpreted as placing any restrictions or qualifications upon the grant of the moneys. This petitioner then had no more control over the use of such moneys in the hands of the trust estate than he had over the use of securities and properties previously granted to such trust estate. We are thus held to the conclusion that, when this petitioner placed the securities described in the findings of fact in the hands of his brokers for sale and received from such brokers the selling price thereof, less commissions, it being agreed that the amount so received represented the true market value of such securities at that time, this petitioner realized a loss from the sale of such stocks and is entitled to deduct such loss from his gross income for the year in which the transaction occurred.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*